Good morning may it please the court my name is Sam Watkins I am the plaintiff appellant in this case appearing pro se I would like to reserve four minutes of time for rebuttal please. The notices of seizure of infringing merchandise that I seek in this case were created by Customs and Border Protection explicitly to be publicly disclosed to the owners of US registered trademarks to let those owners know of the fact that Customs had encountered and detained inspected and ultimately seized goods bearing counterfeit versions of those trademarks. There is no evidence in this case whatsoever that any of those goods ever turned out to be genuine. The only evidence in this case is that the goods in fact were counterfeit as determined by Customs hence the creation of a seizure. A notice of seizure is not ever created for any other kind of infringing trademark good detained by Customs. So now the agency has made these public disclosures expressly to facilitate civil lawsuits by the owners of trademarks against either the manufacturer, the exporter, and or the importer of the counterfeit goods. An example of a civil lawsuit would be under the Federal Lanham Act where a trademark owner can get statutory damages of up to two million dollars per infringed trademark as well as a permanent injunction against either the manufacturer, the exporter, or the importer of those goods. And that is a very critical element of this case because if that trademark owner is able to enjoin a manufacturer or exporter or importer of each other or importing those goods again into the United States that effectively puts that importer or exporter or manufacturer out of business with respect to those goods. Now in this case the very purpose of these notices of seizure then is irreconcilable with the reasons why the agency has decided that disclosure to me is impermissible under Exemption 4 of FOIA. But under Exemption 4 you have to first of all suggest that either it isn't commercial information or it isn't privileged and confidential, correct? Well the government has the burden of showing that it is confidential or financial. I guess the government has suggested it's commercial information. Well your honor my position is that illegal enterprises and that's the only evidence in this case is that this was illegal enterprise of importing contraband goods in the U.S. illegal under any scenario. Is there a definition of commercial in the regulations or in the statute? No your honor it leaves it up to the courts to define what is or is not commercial. Well then if I give commercial its ordinary meaning this is absolutely a situation where this would be a commercial transaction would it not? And the information therein commercial then to the transaction? Only if commercial is broad enough to include transactions conducted illegally. Well but you have manufactured data there, you have imported data there, you have merchandise data there, you have port data there, all of that could be used and could be said to be commercial. I suppose one could argue that way. I happen to argue otherwise that an organization that exists and the only evidence we have is that these importers they've not been identified exists for one reason only and that is to violate the laws of the United States. And my argument is that an organization whose only line of business is prohibited by both the criminal and the civil laws is not a commercial entity is a criminal organization and that whether this money changes hands within that criminal organization that is not commercial within the meaning of exemption for under FOIA. Exemptions under FOIA are to be construed narrowly to effectuate a disclosure purpose and giving a broad interpretation to commercial to include even criminal, purely criminal transactions would be to give to exemption for an overly broad interpretation in violation of the pro-disclosure purposes of FOIA. And if I disagree with that then the next place you have to go is privileged or confidential, correct? Correct, Your Honor. And in this case to prove confidentiality the government would have to show that there exists an actual market. Well first of all there is no claim of privilege in this case. It's all would be confidential. So to prove confidentiality the government would have to show the existence of a relevant market, actual competition within that market, and would have to show with evidence the likelihood of substantial in competitive injury occurring to a participant in one of those markets in the event disclosure was made to me. And I disagree that they met any of those requirements, Your Honor. But you'd agree, wouldn't you, that the information wouldn't get out even to the government if they didn't force it on them? Force it on those who would import? Well yes, Your Honor. What you're talking about now is whether the disclosure was made voluntarily or involuntarily. No, what I'm talking about is whether it be confidential information. As I understand confidential information this is information the disclosure of which would be a threat of competitive injury to importers who guide zealously their supply claims. So I'm just trying to figure out if this is really confidential information. I don't think you could get it any other way than the government forcing them to give it to them. Well the information that we're talking about, Your Honor, is the information... More to it than that, wouldn't you say, there's manufacturer data, there's importer data, there's merchandise data. Names of the manufacturers and addresses of the manufacturers. Names of the exporter and address. Then there's a description of the counterfeit goods itself, which is often falsely manifested. So yes, that information is required by the government to be put into the paperwork. But is the name of the business in your address the type of information that is confidential? Maybe criminal organizations don't want the world to know who they are and where they're located. But most business people that I know of would not treat their names and addresses as confidential. That's information most businesses want out there to attract customers. Well I would have thought that people would, having represented some manufacturers and some retailers, that access to manufacturers and supply chains is exactly the information that is confidential. I mean when I was representing Simplot, I fought like heck to make sure that nobody knew what my supply chain was. Your Honor, it is conceivable that there is an importer who would like to keep its source of goods, even if they're counterfeit, a secret. But there's no evidence in this case whatsoever that any of the importers that might be named in a notice of seizure actually had a supplier. You're just suggesting that the importers weren't there. But there are affidavits of government people in the record which would suggest the same thing that I am now questioning you about. Yes, Your Honor, but what we're doing is we're going down the road that the court disapproved of in Wiener versus the Federal Bureau of Investigation, which is the government can't satisfy its burden under FOIA, proving an exemption, by simply stating that this is the type of information that a company might want to protect, without providing any additional information whatsoever, showing that information is protected in even a single instance, and thus putting the burden on me to disprove a categorical presumption against disclosure without providing me with any evidence on the basis to do so. Now, when the agency first promulgated the regulation that created notices of seizure in the first place, it did do the formal notice of rulemaking procedure prescribed by the APA. Now, several commenters to that rule objected to the rule to Customs and Border Protection, saying, wait a minute, disclosure of our name and address or the name and address of our supplier would violate both the Trade Secrets Act and not be disclosable under exemption for a FOIA. And in that rulemaking, and I believe that's at court record 34, page 64, the agency said, no, our position is this limited information is not going to violate FOIA. It is releasable under FOIA. Exemption 4 will not require us to withhold that information, and it's not a violation of the Trade Secrets Act. Now, the agency had it right when they issued the rule. They got it wrong now, and the district court erred below when it agreed with them. Now, I think I described before that the agency has not even described a relevant market. According to the agency, the relevant market for Exemption 4 in this case is the commercial importation market, and that is a hopelessly broad market without any definition. And Mr. Watkins, didn't you foist that definition on yourself by virtue of the nature and scope of the request? I mean, didn't the request define the market? No, Your Honor. I didn't define a market. I think the government would prefer that to shift the burden on me, but No, I know you didn't define it, but I mean, the nature of your request, in effect, defined it because it's very broad. Your Honor, I did ask for all notices of seizure for a period of time at certain ports of call. That will capture counterfeit goods of all kinds and varieties. And so why couldn't the government logically say that is the relevant market? Well, the relevant market under Exemption 4, how do you show competition within a market that includes virtually every good manufactured by man? I don't know, but it doesn't seem to me that it's up to the government. That just seems like it's bootstrapping to me for you to say, I want the universe, but the government should tell me, no, I'm not entitled to the universe. I'm rather entitled only to, you know, something in Keokuk, Iowa. Well, the government's position is that because I've asked for notices of seizure that relate to goods that straddle various markets, that the burden is now on me to prove the non-applicability of Exemption 4. Now, I agree, perhaps, that the categories of goods that I've asked for is broad. But the government has produced no evidence at all regarding even a single market. If the government wanted to make an exemplary display of how Exemption 4 applied to even a single notice of seizure within a single market, the government could have and should have. They elected not to. And they withheld information from me. Why should they have? I'm sorry, Your Honor? Why should they have? Well, because case law, and I go back to the Weiner versus FBI case, there is an affirmative obligation on the government to prove the applicability of an exemption. And that exemption has to be done according to the dictates of, the case is escaping me now. But the existence of markets, competition within those markets, and harm to befall a competitor in those markets should disclosure be made. And in this case, what the government has done is said, we're not going to define a market because there's too many markets. And we're not even going to present the affidavit or declaration of a single participant in one of those markets to show with real evidence. What the government has done is just said, there could be markets that your request could implicate markets. We're not going to bother to tell you which ones those are. There could be competitors within those markets. And disclosure of this information could harm them. I would submit that under Weiner versus FBI and the other cases that it cites, that's showing is insufficient. There has to be a middle ground between the government putting on no evidence versus putting on simply a categorical argument based on would have, could have, should have, Your Honor. Well, I guess my question to you about that is, is this determination by the district court in this particular matter that the release of information would cause competitive harm a factual determination or a legal one? I don't see anywhere in the facts of this case the court could have made that conclusion. I think the court simply accepted. If it's a factual one, then of course I have to give it some great deference. If in fact it's a legal determination, then I might be able to do a de novo review. That's why I ask you. Right. Yes, sir. I don't believe that there was sufficient facts in the record for this, for the judge below to conclude. That's not an argument good to make. That says that what the judge did on the facts is wrong. And if I'm to give him deference, clear error deference, that wouldn't be a great argument. No. Well, what I'm saying, Your Honor, there was an insufficient factual record. That is a de novo consideration that this court may make, whether there were sufficient facts in the record for the court to even entertain the legal argument, the legal question of whether Exemption 4 applies. Now, moving beyond whether that, I think that what the judge did was he flew over the absence of facts in the case and in essence reached a legal argument, a legal conclusion, which was the government says these are confidential documents. They say they relate to business. I believe that even if it's counterfeit, it's a business. It's commercial. And I believe that the protection of a supplier's identity is the kind of information that would be confidential in a normal business. And so I'm going to reach as a matter of law, categorically speaking, that all notices of seizure are confidential business information. So I believe that it, in fact, at the end of the day, was just simply a legal conclusion, Your Honor. I see that my, I'm in the library. Your argument, you've got 40 seconds left for rebuttal. Yes, sir. Good morning. May it please the Court. Kayla Stahman representing Defendant Appellee Customs and Border Protection. At issue here is information included in seizure notices issued by Customs to trademark holders, which Customs has withheld from Mr. Watkins pursuant to Exemption 4 of the FOIA because the information is confidential commercial information submitted by a person. Customs position in this is that the district court properly found that in this case the information is exempt because release of that information is likely to result in substantial competitive injury to the third parties that provided that information to Customs, in this case the importers. The overall purpose of FOIA. Let me ask you a question. Normally the competitive harm is harmed from advantaging the person who makes the request. Yes. Here, that isn't really the case. I mean, here you're basing competitive harm on harm to the rascals themselves. If I understand your question correctly, and I just want to make sure that I do, here our argument with respect to competitive harm is that the importers that submit that information to Customs will suffer competitive harm when their competitors, other importers, are able to get information about their surprises. In other words, you want to protect those folks from each other. Exactly. Whereas in the normal event, the competitive harm is disclosure to a competitor, that is the person who's making the FOIA request. I think that that is usually the context in which these FOIA requests come up. Well, is there any situation where it hasn't been the context that you're aware of? I can't think of a specific situation. I think the reason that it makes sense in this context is because once Customs provides this information to Mr. Watkins, it's publicly disclosed. And any competitor can come forward and make a FOIA request for this information and use it to their advantage. And so, while the person requesting the information isn't necessarily dispositive in this case, because once it's provided via FOIA, it's available to any other individual. You're not just protecting the malfactor here. You're saying don't give out the information so that someone else will learn how to be a malfactor. Is that, am I understanding it? Well, I think that if I understand your question, you're implying that all the importers at issue here are doing bad things. And I think our argument with respect to that is that this information reveals general importation habits of the importer, including the customer demand and the supply chain. And the record shows that in most instances, the importer is not aware that the goods are necessarily counterfeit. And so, they're not necessarily the bad actor. So, our real argument is, listen, in most cases, these importers don't know that the goods are counterfeit. Your attitude toward where you do have a malfactor, that information, would that be disposable? No, because, well, one, it's difficult to know at this stage, at the seizure stage, whether the importer is actually doing something wrong or not intentionally. Because that's not the determination that Customs makes. Customs is just trying to determine whether the goods themselves are counterfeit or not. And so, it's difficult for Customs to make that value judgment in this instance. Because, again, it's the rare case where the importer says, oh, you know what, I knew that these goods were counterfeit or not. In most instances. They're importing coach bags for $12 apiece. We're pretty sure that that's probably not a coach bag, right? Yes, but it's not necessarily certain that the importer that's importing those coach bags knew that the coach bags were not counterfeit. Why? Well, typically, I guess there are a number of ways. This isn't necessarily explored in the record, but there are a number of ways that these coach bags could come to the importers for a reduced value. For example, gray market goods, where they are trademarked and licensed in another country, but then imported here. So, yes, while you could draw that logical conclusion, let's say coach bags are typically $200 as opposed to $15. Again, that's not what is at issue when Customs is trying to make a trademark determination in this instance. So, the goats will be protected with the sheep? Correct. I'm a little worried about your argument that suggests that this is only the first step in this whole process, and therefore, because it's only the first step in this whole process of protection to the importers, that therefore, we ought to sustain where you're going. Isn't it true that 19 U.S.C. 1526F imposes civil penalties against the importer for each seizure in increasing severity, thereby undermining the government that the seizure is only a probable cause determination? There actually is a fine provision, which you're citing. If you look at the record, I believe it's the Declaration of Richard Schovanec that indicates that rarely those fine provisions are actually used and imposed by Customs for the exact reason that I explained earlier, primarily because it's impossible in many circumstances to know whether the importer at issue was aware that the goods seized were counterfeit. Again, the importer and the exporter are usually middlemen in a long series of transactions, and so they're not always necessarily dealing directly with the manufacturer or the person dealing with these goods. Well, so then, since there's a civil penalty in each one of these situations, I have a tough time understanding how the District Court could get the idea that this is at the probable cause start of this process, because they have a penalty in each step of the process. And perhaps I wasn't actually clear on my answer to your question. It's my understanding from reviewing the record that while Customs can impose a civil penalty, there's not a civil penalty imposed in each one of these cases. That's a determination made by Customs based on the regulation, whether the exporter or the importer was, I think, there's a knowingly or aiding and abetting standard imposed in that regulation. So I think the Chovanec Declaration supports the idea that typically these fines are not imposed by Customs on importers in these situations. But they can. They can. They can, yes. And as I understand it, you're also suggest that the 30-day detention procedures that apply to gray market and copying or simulating goods prior to seizure do not apply to counterfeit goods. So I think that to be clear. Isn't that your argument? Typically, yes. It is a one-step process where they determine, listen, we're going to seize these goods. However, in fact, counterfeit goods may be a part of that because they are certainly included in the description of 133.22 goods. I think that it can also be a two-step process. And in the case of gray market goods and goods that are confusingly similar, they will first seize those goods. And then they could, in fact, detain those goods. So there could be an issue of seizure notice and then also an issue of detention that applies Section 133.21c. I think that it's important to consider Mr. Watkins' request. Well, my worry, and I guess this is of some worry to me, the way the district court came out, seems to me that that whole thing clearly implies that counterfeit goods are one type of 133.22 goods. The remainder of 133.22 applies to them as well. And yet, I guess there's no explanation why subsection D would then exclude counterfeit goods from the exception under c1. I'm not sure I understand your question. Well, my worry is that with your arguments, which were, as I understand it, to suggest that this was somehow confidential information and that you were trying to help with competitive advantage and that the regulations all go in the same direction, that there, those, because you look at the regulations themselves and look at where they go, it doesn't hold up that they are confidential. I think that the regulatory history of both the counterfeit goods provision as well as the gray market goods provision and the confusingly similar provision make it pretty clear that there's an expectation that when these entry documents are submitted by importers to customs and the entry documents are what are used to derive the seizure notices, they look at the entry documents to fill out the seizure notices, there's an expectation, regardless of the type of goods, that these documents are confidential. And so, and I think that's reflected in the declarations from the importers as well on the records, that they have this expectation that when this information is provided to customs, that the information is in fact confidential. Well, I guess my worry is, and I'm not going to be the first to tell you, I'm not the most versed in this particular matter, but I'm trying to take what this, what the appellant suggests here and apply them to what you suggest, and I'm saying the regulations just don't seem to coordinate. They seem to say what he's saying. That's the only thing I was trying to do. Let's move to then about the disclosure. You disclose this stuff to the trademark holders. Now, you first of all suggest that the disclosure to the trademark holders, therefore, does not make it a public disclosure because it's only to the trademark holders. Isn't it true that the trademark holders can do anything they want with this information? It is true that the trademark holders can use this information publicly if they so choose. However. So, at that point, you have allowed one particular person, one particular group to have this information without problem, and they can disclose it to anybody they want. So, why is that not waiving the protection that you suggest? I think it's important to consider that limited release of information in the context of Section 133.21c, and again, that limited release of information is required both by the statute and by the regulations. So, Customs doesn't really have much of a choice as to whether it discloses this information, and. Or is it, in fact, instead of that, isn't it the idea that since Congress mandated this law and suggested that it be disclosed to those, that it never intended to have an exemption at all? I understand the tension between those positions, but I do believe the regulatory history makes it fairly clear that this information is still considered confidential by Customs, and that's why it's only this very limited disclosure or release of information that is permitted by the regulations to the interested party. So, the regulation makes it very clear that the only reason that this is okay is because the trademark holder, the interested party, is the only party getting this information. You don't have any choice as to revealing it to them. No, we don't. Isn't it true that you reveal more information to them than what the statute requires? Customs has made the determination that in order to make the disclosure meaningful to the trademark holder, Customs needs to work with the trademark holder to be able to determine whether these goods are indeed counterfeit or not. It can't do it by itself. I understand that, but isn't it the fact that if you're disclosing more than the statute even requires, and you're giving regulations out to do that, what does that do to the idea that this is somehow then not a disclosure which would eliminate your ability to suggest that you waive the protection? I think that when Congress mandated the initial disclosure or the fact of a seizure, that disclosure needed to be meaningful. So, just calling Nike and saying, hey, we have, you know, we have potential seized goods here, it doesn't mean a lot in the process. You need to give them more information to be able to have them help Customs be able to assess whether these are in fact counterfeit or not. I appreciate your argument, and I appreciate even your justification. But it really doesn't go to my question, which is then if you're going to give all of that information, which wasn't even required under the statute to these particular people, why doesn't that waive the protection that you think FOIA gives? I think that, again, you need to look at the fact that it's a limited disclosure of information. And most of the waiver, again, waiver is a fact-specific determination, but a lot of the waiver case law suggests that to have a true waiver, this information needs to be included in a permanent public record. So, you know, you disclosed it with respect to a FOIA request. Clearly, you're making that public. Here, there's no permanent public record of the disclosure. Well, there's any case law which suggests it can only be in the public record, or otherwise you could call everybody you wanted about this particular information on these trade, these importers. And as long as it wasn't in the record, it wouldn't be waived. Again, I think that the case law in waiver tends to support the position that in order for something to be waived, it needs to be preserved in the permanent public record. And usually, this is a nod to something being technically almost impossible to obtain by a person. And so, it's impossible to waive that protection if it's not easily attained by someone in the public. And here, that's simply not the case. You know, there's a regulation that requires, and a statute, that requires that we disclose the fact of a seizure. And customs really doesn't have an option as to whether or not to disclose this information to give meaning to the statute. And just in closing, I think the overarching sort of philosophy of FOIA and Exemption 4 is important to consider when you're thinking about Mr. Watkins' request. Again, Exemption 4 of FOIA is intended to protect information where disclosure of that information would be harmful to third parties and would reveal little about the operation of the government. And in this case, customs has disclosed everything that says anything about the government. He knows how many seizures took place, how many ports, what days, what time. All he wants is information that says something about a third-party commercial actor. And that's simply not the intention of the FOIA. Thank you. Thank you. What about the last three sentences of counsel? Well, about why I want the information? Yeah. The FOIA is designed to let you know what the government's doing, not what individuals are doing. Yes, sir. And I would like to know who the government has decided is bringing counterfeit goods into the United States and in what quantities. I mean, to me, it's the akin, it's the same as a police blotter where you read in the newspaper who got arrested for drunk driving or burglary. That information gets published all the time, and that is a matter of interest to the public. And what our government is doing to seize counterfeit goods and who it's seizing them from at the borders of interest to me, and I would argue interest to a lot of people in the public. Now, on the issue of prior disclosure, Your Honor, I believe the court has it right. There was a prior disclosure to trademark owners. And the government has assiduously avoided trying even to address the ASH FAR line of cases where when you have a prior public disclosure that is as specific as my request, that matches my request, and that was made officially and publicly, then there is waiver. And the waiver cases that the government has relied upon where there was found to be no waiver, the documents when created were all intended to be internal, secret, confidential government records that through some fortuitous turn of events, the government found a need to make a limited disclosure. That limited disclosure always came with restrictions on further dissemination. And they always involved things like personal privacy or national security interest. None of those are applicable here. There was a prior public disclosure. And when the government made the regulation authorizing these disclosures, commenters specifically addressed the FOIA issue and the government said there is no FOIA issue here. There shouldn't be. Thank you, Your Honor. Case 09-35996 is here submitted. We thank counsel for your argument and also you, sir. I don't know whether you're a lawyer. You argued just like one. So, all right. Appreciate it and thank you and this court is adjourned until tomorrow.
judges: Walter, Rymer, Smith N. R.